[Civ. No. 61952. Second Dist., Div. Five. Feb. 1, 1982.]

RAY THOMAS, Plaintiff and Appellant, v.
RICHARD B. FOX et al., Defendants and Appellants.

COUNSEL

Haws, Record & Williford and E. Jerald Haws for Plaintiff and Appellant.

Jerome Zamos for Defendants and Appellants.

OPINION

HASTINGS, J.—Plaintiff and appellant Ray Thomas (Thomas) filed the present action for declaratory relief, specific performance and damages when defendants and respondents Richard B. Fox and Marjorie R. Fox (Foxes) refused to convey real property known as the Santa Barbara Trailer Park (the Trailer Park) pursuant to a written agreement of sale. The trial court found the agreement to be unenforceable because of an alleged invalid subordination clause contained therein. This appeal by Thomas followed.

The Foxes agreed to sell the Trailer Park owned by them to Thomas for a total purchase price of $450,000. The real estate purchase contract and receipt for deposit, after stating the purchase price and identifying the legal description of the property, stated: "See Addendum Attached & Incorporated herein by this reference: NOTE: It is agreed that said Note and 2d Trust Deed in the amount of $50,000.00 hereinafter referred to shall be subordinate to a new First Trust Deed that Buyer will obtain in an amount not to exceed 60% of the purchase price." (This portion of the agreement is hereinafter referred to as the subordination proviso.)

The relevant portion of the addendum reads as follows: "1. Buyer will deposit in escrow with Santa Barbara National Bank the balance of purchase price as follows:

"All cash including above deposit except, Buyer shall create a note in favor of Seller herein in the amount of $50,000. payable in three equal annual installments beginning one year from the date of close of this escrow, plus 10% interest per annum on unpaid balances.

"Seller desires to create a Tax Deferred Exchange with the subject property under I.R.S. Code 1031. Buyer agrees to cooperate to create such exchange at no additional cost to Buyer. Seller shall use their best

efforts to negotiate said 2nd Trust Deed and Note as part of the consideration in acquisition of an exchange property.

"In the event that Sellers are not able to acquire an exchange property during the term of this escrow using said Trust Deed and Note as part of the consideration for such exchange, then Buyer herein shall pay $50,000., cash, in substitution for such note and 2nd Trust Deed at close of escrow on this transaction."

An escrow was opened by Thomas but the escrow instructions drawn by the escrow officer did not include reference to the tax-deferred exchange portion of the agreement. For this reason the Foxes refused to sign the first two drafts of the proposed escrow instructions. The third draft, however, did properly represent the agreement of the parties in all respects but the Foxes still refused to sign. Thomas then promptly brought the present lawsuit for specific performance and damages. The claim for damages was dropped and the action proceeded on the count for specific performance.

The findings of fact and conclusions of law signed by the court are noteworthy in several respects. In general they favor Thomas but deny him relief only because of the alleged invalidity of the subordination proviso. In sum the court found: (a) The contract was adequate to support an action for specific performance, and all terms of the contract were just and reasonable to both Thomas and the Foxes. (b) Pursuant to the contract Thomas had escrow instructions drawn up for the Foxes' signatures which the Foxes objected to. Amended escrow instructions, however, were drawn up conforming with the contract but were not signed by the Foxes. (c) Time was not of the essence of the contract; therefore, the Foxes were not justified in seeking to withdraw from the transaction because of delay in preparation of the amended escrow instructions. (d) Thomas performed all of the acts required of him under the contract and (e) the property was unique in character therefore damages would be inadequate for compensation for breach of contract.[1]

The one finding fatal to Thomas' cause of action stated: "The contract between the parties provided as follows: 'It is agreed that said note

---

[1]The Foxes filed a cross-appeal based on the court's refusal to enter their proposed findings of fact and conclusions of law. The cross-appeal is totally without merit as there is substantial evidence to support the court's findings with the exception of the finding pertaining to the subordination proviso.

and second trust deed in the amount of $50,000 hereinafter referred to shall be subordinate to a new first trust deed that buyer will obtain in an amount not to exceed 60% of the purchase price.' No other terms of the proposed first trust deed therein referred were set out in said contract. Specifically, said contract failed to provide either the rate of interest or the maximum or minimum rate of interest payable on the obligations secured by said proposed new first trust deed."

## ISSUE ON APPEAL

The sole issue on appeal is whether the court erred in ruling that the subordination proviso in the written agreement was invalid thereby rendering the entire agreement unenforceable.

## DISCUSSION

There is no factual dispute concerning the terms of the contract of sale. The agreement provides for a purchase of the property by Thomas by one of two alternative methods. The first and most desirable method to the Foxes was a tax-free exchange pursuant to Internal Revenue Code section 1031. If the Foxes were able to arrange for such an exchange *during the term of the escrow*, Thomas would pay to the Foxes $400,000 in cash and create a promissory note in favor of the sellers for $50,000 payable in three equal annual installments beginning one year from the date of close of escrow at 10 percent interest per annum on the unpaid balance. The agreement then specifically provides: "Seller [the Foxes] shall use their best efforts to negotiate said 2nd Trust Deed and Note as part of the consideration in acquisition of an exchange property.

"In the event that Sellers are not able to acquire an exchange property during the term of this escrow using said Trust Deed and Note as part of the consideration for such exchange, then Buyer herein shall pay $50,000., cash, in substitution for such note and 2nd Trust Deed at close of escrow on this transaction."

The second method of purchase is quite simple. In the event the Foxes were unable to arrange for a tax-deferred exchange Thomas would pay the entire $450,000 purchase price in cash.

As noted earlier the court found the contract unenforceable because the subordination proviso lacked specificity in that it failed to provide

either the rate of interest or the maximum or the minimum rate of interest payable on the proposed new first trust deed. Although this finding of fact does not make reference to any California decisional law, it is clear that the court was relying on a line of cases that hold that a deed of trust that is to be subordinated to a subsequent construction loan on the property must contain the requisite terms of the construction loan. For example, in *Magna Development Co. v. Reed* (1964) 228 Cal.App.2d 230, at page 236 [39 Cal.Rptr. 284], the court stated: "Turning to the subordination provision in the instant case we find that it provides essentially as follows: 'Said Deed of Trust. . . . will contain a subordination clause which will provide that Sellers . . . will agree that said Deed of Trust may be subordinated to a Deed of Trust securing a construction and/or take-out loan thereon. . . .' It is apparent that this provision does not state the amount of the construction loan which would be placed on the property, nor any of its terms, nor when it would become due, nor the rate of interest it would bear, nor the terms or conditions of the first deed of trust to secure such loan."

The *Magna* opinion after citing other similar cases upon which it relied then stated (at p. 238): "The rule underlying the foregoing cases is that when something is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. 'Since either party, by the very terms of the promise, may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' [Citations.] In the instant case, the subordination agreement contains none of the provisions deemed essential by the appellate courts of this state, but left such provisions to the future agreement of the parties. Accordingly, the lower court was justified in concluding that the subordination clause in question rendered the contract uncertain and indefinite as a matter of law."

Thomas in his opening brief correctly points out that all of the cases on this issue were concerned with the subordination of a purchase money mortgage to a construction loan required by the buyer in order to enable him to develop the real property. In such a situation the security of the seller's subordinated deed of trust is of paramount importance. After *Magna* and other similar decisions our Supreme Court in *Handy v. Gordon* (1967) 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329, 26 A.L.R.3d 848], further summarizes the reasoning behind the need for specificity in such transactions. The opinion states, at page 581, ". . . an enforceable subordination clause must contain terms that will define

and minimize the risk that the subordinating liens will impair or destroy the seller's security. [Citations.] Such terms may include limits on the use to which the proceeds may be put to insure that their use will improve the value of the land, maximum amounts so that the loans will not exceed the contemplated value of the improvements they finance, requirements that the loans do not exceed some specified percentage of the construction cost or value of the property as improved, specified amounts per square foot of construction, or other limits designed to protect the security. Without some such terms, however, the seller is forced to rely entirely on the buyer's good faith and ability as a developer to insure that he will not lose both his land and his purchase price."

In our present sale we do not have a land development scheme or subordination of the $50,000 second trust deed note to a construction loan. The loan would be to Thomas to enable him to purchase the trailer park. There are no dangers or security problems in the transaction as far as the Foxes are concerned. If the Foxes located an exchange property during the escrow and the exchanging party agreed to hold the $50,000 note then Thomas would pay $400,000 in cash and the $50,000 note would pass to the exchanging party. If, however, the Foxes were unable to consummate a tax-deferred exchange because of the $50,000 note, Thomas would cancel the note and pay the additional $50,000 in cash which would enable the Foxes to complete any tax-deferred exchange that they could arrange. The Foxes would not be left holding the promissory note. If a tax-deferred exchange could not be arranged during the term of the escrow, the Foxes would then cash out for $450,000. Furthermore, the note was not a security risk *if* a third party accepted it. According to the terms of the agreement the first trust deed loan that Thomas would obtain to raise the purchase price could not exceed 60 percent of the $450,000 price. Therefore, there was sufficient equity to protect the holder of the note and the concern for the holder of the note as expressed in *Handy, supra*, 65 Cal.2d 578, was eliminated.

The courts will give written agreements if reasonably possible a construction which will result in their being enforceable contracts. (Civ. Code, § 1643; *Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749, 761 [75 Cal.Rptr. 533].) ■ In order for a court of equity to decree that an obligation is specifically enforceable the terms of the contract must be complete and certain in all particulars essential to its enforcement. (*Lawrence* v. *Shutt, supra.*) ■ Except for the court's misconception of the law concerning subordination provisos it concluded, and we

agree, that the contract was specifically enforceable. For the reasons stated above, the court should not have ruled that the subordination proviso in this agreement was invalid. The contract was specifically enforceable and its terms can now be implemented as originally intended.

The judgment is reversed.

Stephens, Acting P. J., and Ashby, J., concurred.