[L. A. No. 29137.   In Bank.   Jan. 20, 1967.]

C. JON HANDY, Plaintiff and Appellant, v. M. E. GORDON et al., Defendants and Respondents.

William L. Stein for Plaintiff and Appellant.

Heily & Blase, Edward L. Lascher and William C. Hoelsken for Defendants and Respondents.

TRAYNOR, C. J.—Plaintiff appeals from a judgment for defendants entered after the trial court granted a motion for judgment on the pleadings. Plaintiff contends that his complaint states a cause of action for specific performance of a contract to sell land and that therefore the trial court erred in granting the defendants' motion. (See *MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 815-816 [161 P.2d 449].)

The complaint alleges that on January 21, 1964, the parties entered into a written contract in which defendants agreed to sell certain real property to plaintiff. The contract was set forth in escrow instructions that described the property as approximately 320 acres known as the Gordon Ranch and excepted about three acres that included the sellers' home. The purchase price was $1,500,100. The instructions stated that $300,000 was paid to the sellers outside of escrow and that an additional $100 was deposited with the escrow company. The buyer agreed to execute a note secured by a deed of trust for the balance of $1,200,000 plus interest of 2 percent per year. The note was to be paid in annual installments of

$120,000 or more beginning three years after the close of the escrow, and any unpaid balance was to become due 10 years after the escrow closed. The sellers agreed to subordinate their trust deed to other trust deeds securing loans to be obtained by the buyer for construction and permanent financing.

The buyer was given the right to obtain a zoning modification and to withdraw from the contract if he did not approve geological, engineering, and zoning reports. At the close of the escrow the legal description was to be approved by the parties and was to show title vested in plaintiff C. Jon Handy or nominee.

The complaint alleged that the recital of the $300,000 payment was a sham and was included in the instructions at the sellers' request to win a bet. The true consideration was $1,200,100, which plaintiff alleged was fair and reasonable and was substantially higher than the prices at which comparable property in the locality was selling.

After defendants sought to rescind the contract on April 2, 1964, plaintiff brought this action for specific performance. The court granted the defendants' motion for a judgment on the pleadings on the ground that the agreement was too uncertain to be enforced because the subordination clause lacked essential terms.

Plaintiff contends that the trial court erred in holding that the subordination clause lacked essential terms. He points out that the clause specified that the construction and financing loans should be in the maximum amounts of $10,000 and $52,000 per lot, should have maximum interest rates of 7 percent and 6.6 percent, and should mature in not more than 6 and 35 years respectively. Although the contract does not specify the number of lots into which the land is to be divided, plaintiff contends that the number of lots was not left to future agreement of the parties but was properly left to his discretion as the developer of the contemplated subdivision. No problem of indefiniteness is presented under plaintiff's view of the contract. It sets forth all the terms defendants deemed essential to protect their interests and leaves to the business judgment and good faith of plaintiff the working out with lenders, builders, and home buyers of the details to make the venture a success.

Defendants contend that whether or not the trial court erred in finding that the contract is too indefinite to enforce, its ruling must be sustained on the ground that it appears from the complaint as a matter of law that the contract "is

not, as to [them], just and reasonable." (Civ. Code, § 3391, subd. 2.) We agree with defendants' contention.

■ Although the parties to a contract of sale containing a subordination clause may delegate to the vendee or third party lenders power to determine the details of subordinating loans, an enforceable subordination clause must contain terms that will define and minimize the risk that the subordinating liens will impair or destroy the seller's security. (*Stockwell* v. *Lindeman*, 229 Cal.App.2d 750, 758 [40 Cal.Rptr. 555]; *Magna Development Co.* v. *Reed*, 228 Cal.App.2d 230, 236 [39 Cal.Rptr. 284]; *Burrow* v. *Timmsen*, 223 Cal.App.2d 283, 289-290 [35 Cal.Rptr. 668, 100 A.L.R.2d 544]; *Roven* v. *Miller*, 168 Cal.App.2d 391, 398 [335 P.2d 1035].) Such terms may include limits on the use to which the proceeds may be put to insure that their use will improve the value of the land, maximum amounts so that the loans will not exceed the contemplated value of the improvements they finance, requirements that the loans do not exceed some specified percentage of the construction cost or value of the property as improved, specified amounts per square foot of construction, or other limits designed to protect the security. Without some such terms, however, the seller is forced to rely entirely on the buyer's good faith and ability as a developer to insure that he will not lose both his land and the purchase price. ■ Even if we were to assume that a contract of sale contemplating subdivision by the vendee is sufficiently different from the usual land sale contract to take it out of the operation of the anti-deficiency legislation (Code Civ. Proc., § 580b; see Hetland, *Real Property*, 53 Cal.L.Rev. 151, 161-162), the personal liability alone of the vendee would not constitute sufficient protection to the vendor to permit specific performance. (Civ. Code, § 3391, subd. 2; *Klein* v. *Markarian*, 175 Cal. 37, 41 [165 P. 3]; *Quan* v. *Kraseman*, 84 Cal.App.2d 550, 551 [191 P.2d 16]; see Rest., Contracts, § 373.)

■ The contract alleged in the complaint does not afford defendants any additional protection.[1] Although the proceeds

---

[1]It should be noted that in this case we are dealing simply with a contract for the sale of real property and the rights and duties flowing therefrom. Plaintiff has not alleged that the contract was made pursuant to any understanding between the parties that might give rise to enforceable fiduciary duties that would afford defendants protection that the contract itself does not. There can be no doubt that through appropriate agency, partnership, or corporate arrangements one person may delegate to another broad powers over the economic development of his assets. Such economic-legal arrangements have their own rules to protect the interests of the parties thereto, and by concluding that the contract in this case is

of the subordinating loans are to be used primarily for construction and refinancing, any funds that are not needed for these purposes may be disbursed to plaintiff. The absence of restrictions on plaintiff's use of these funds leaves defendants without assurance that all of the proceeds of the loans will be used to improve the land that represents their security. Because the limits on the loans are expressed as absolutes, they provide no assurance that the amounts of the loans will not exceed the value the improvements add to the security. Moreover, the limits are maximums per lot, and plaintiff has unrestricted discretion in determining the size of each lot. Thus defendants are not assured that the total amount of the subordinating loans will be kept low enough to enable them to protect themselves by bidding on the property if the senior liens are foreclosed.[2] Finally defendants did not receive a downpayment that would effectively cushion their position, and the first payment of principal is deferred until three years after the close of escrow.

Thus, the contract leaves defendants with nothing but plaintiff's good faith and business judgment to insure them that they will ever receive anything for conveying their land. Such a contract is not as to them "just and reasonable" within the meaning of Civil Code section 3391.

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

not a just and reasonable resolution of the parties' objectives, we intend to cast no doubt on the validity of other business arrangements pursuant to which broad powers may be delegated.

[2] If the property is divided into one-acre lots, the subordinating construction and financing loans could total $3,200,000 and $16,640,000 respectively. If ¼-acre lots are chosen, the loans could total $12,800,000 and $66,560,000.