[Civ. No. 29947.   Second Dist., Div. Three.   Aug. 3, 1967.]

BERNARD POLLOCK et al., Plaintiffs, Cross-defendants and Appellants, v. MIKE I. TIANO et al., Defendants, Cross-complainants and Respondents.

Schumacher & Hale for Plaintiffs, Cross-defendants and Appellants.

Robert Landon Kirste and Benjamin T. Adachi for Defendants, Cross-complainants and Respondents.

SHINN, J.*—Pollock and wife sued Tiano and wife for specific performance of a contract to sell plaintiffs a city lot. In a second cause of action plaintiffs sought damages in case specific performance could not be had. Defendants answered, alleging that plaintiffs had failed to perform terms of the agreement essential to entitle them to acquire the property and alleging that the agreement was procured by fraud. Defendants also filed a cross-complaint for damages for plaintiffs' failure to perform the agreement. At the time of trial plaintiffs abandoned their cause of action for specific performance and stood on the cause of action for damages. Defendants introduced no evidence upon their pleaded defense of fraud. The court found that plaintiffs had failed to perform under the agreement, that defendants had sustained damages to the extent of $2,000 and rendered judgment in that amount on the cross-complaint. Plaintiffs appeal.

The facts of the case are undisputed. The determinative issue was whether plaintiffs or defendants failed to render performance in accordance with their contract obligations. Plaintiffs concede, by their failure to discuss the point, that if they were at fault the award of damages to defendants was proper.

We have concluded that the court correctly found that plaintiffs failed to comply with the terms of the agreement which would have established their right to acquire the property and that defendants were justified in refusing to go through with the deal.

The purchase price of the property (lot 23, Block 2 of Clarkdale Tract) was $25,000 to be paid $12,500 through escrow and $12,500 by note and trust deed on lot 23. All the agreements were in the form of escrow instructions given to a savings and loan association as escrow holder. The parties gave their orginal instructions in the escrow October 14, 1963.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

These instructions stated the price and terms of the sale and provided further that the trust deed which defendants would receive would contain a subordination agreement which would cause it to be subordinate to a "deed of trust-note . . . in a principal amount not to exceed $96,000.00 bearing interest," etc.

Plaintiffs were endeavoring to acquire lot 22 of the tract. They negotiated a loan from a savings and loan association of $135,000 to be secured by a trust deed on lots 22 and 23. A trust deed was prepared and agreed upon by plaintiffs and the loan association. By the terms of the proposed trust deed $12,500 of the proceeds of the loan were to be paid to defendants through escrow and $18,000 was to be used to acquire title to lot 22, leaving $104,500 to be used for construction purposes.

January 28, 1964, defendants gave additional instructions to the escrow holder by which they agreed "to execute necessary subordination agreements covering lots 22, 23, 24 of Block 2 of Clarkdale Tract, as per map . . . at the time buyers obtain new construction loans not to exceed $96,000.00 on each lot."

Defendants refused to subordinate their trust deed to the one plaintiffs had negotiated with the loan association; the loan deal fell through and plaintiffs did not deposit $12,500 in the escrow or pay defendants.

We believe the court's finding that plaintiffs failed to render performance is supported by the evidence. The loan was not a true construction loan which defendants had a right to expect, and did expect. Also, the trust deed to which defendants were requested to subordinate their trust deed was not the same or substantially the same as the one to which they had agreed to subordinate. It differed in that it was for a greater amount.

The facts we have stated were established by plaintiffs' evidence. Defendants made a motion for judgment under section 631.8, Code of Civil Procedure. There was argument on the motion. The court expressed the opinion that the proposed loan was not the type of loan defendants expected, inasmuch as it was not a true construction loan. The argument ran as follows: "THE COURT: Do you care to be heard? MR. HALE: Yes, I do, your Honor. I think, in the first place, the financing had been arranged to purchase this land. The construction loan— I think your Honor is apparently taking a very narrow view of 'construction loan.' THE COURT: Well, I should think I

would. It only means one thing. MR. HALE: No, I don't think that is true, your Honor. I think we can present evidence to show construction loans many times, portions of them are used to put on the property. THE COURT: There has been no evidence to that effect, and I wouldn't believe it if I heard it, unless there was an admission on the part of the other side that that would be true. A construction loan means a construction loan, not to buy the very property the construction is to be put on. MR. HALE: Well, if your Honor will allow us to do so, I will put in evidence to show the plaintiff will have to put in approximately an additional $20,000 to complete the construction. THE COURT: I wouldn't care what that evidence was. When a man signs a subrogation [*sic*] agreement to a construction loan, it means the money is to be used for *construction and it doesn't mean it is to be used to buy the very property.* This man only put in $500 and is getting all of the financing out of this man's property. MR. HALE: Your Honor, that is incorrect. He put in $5,000 in the other escrow, not five hundred in this escrow, and he had further costs of $4,000 which he incurred to build on this property. THE COURT: That is all on his own hook. This man is entitled to performance of this contract as it was written, and he didn't agree the man could raise himself by his own bootstraps by borrowing on this property. There is absolutely no right of recovery in this case, and the motion for judgment for the defendants on the Complaint will be granted.''

Appellants' brief reads: ''QUESTIONS PRESENTED Did the Trial Court commit reversible error by refusing to receive admissible evidence concerning the construction and intended meaning of the words 'construction loan(s)' as used in the Escrow Instructions as prepared by La Ballona Savings and Loan Association?'' If this were the only question we would promptly hold that the court was not in error. Plaintiffs did not make a motion to reopen their case or make an offer of proof.

We agree with plaintiffs that the court was wholly disinterested in any evidence explanatory of the meaning of the term ''construction loan.'' In order to protect credulous and inexperienced sellers of property against trickery and fraud, the term when considered alone has to be given the meaning that it is a loan of money to be used for construction of improvements on the property and incidental expenses.

Construction loans are a major part of the business of loan institutions and there is no more necessary and legitimate

method of real estate development. They must be first liens and it is customary to give them priority over trust deeds which secure a portion of the purchase price of the property to be improved. However, there has appeared on the scene a type of financial wizard who operates upon the money of loan institutions without risking his own, if any. (See *Schoenberg* v. *Romike Properties,* 251 Cal.App.2d 154 [59 Cal.Rptr. 359].) He prevails upon a loan institution to loan him enough money to buy a piece of property and construct an improvement on it, and the money is loaned on the basis of the valuation of the property as improved. Theoretically, the value of the property, as improved, will exceed by 30 percent the cost of the land and the improvement, assuming the loan is for 70 percent of value. This may or may not turn out to be the case.

 The point is that if a substantial part of a proposed construction loan is to be used for purposes other than the construction of an improvement, the terms of the loan must be disclosed to a seller when he is asked to subordinate his purchase money trust deed to the lien of the trust deed securing the construction loan. He is taking enough chances if all the borrowed money goes into the construction. To be sure, defendants were informed, when they were asked to agree to subordinate their security, that the proceeds of the $135,000 loan were to be used in part to pay for real estate. But this information came too late. They should have been told that in the beginning.

 We think we can safely say that a standard form of subordination agreement is one which provides for subordination to an instrument which is security for ''A loan made for the purpose of constructing improvements on said land . . . and the costs including but not limited to brokerage fees and insurance fees of obtaining such loan.'' (*Burrow* v. *Timmsen,* 223 Cal.App.2d 283, 287, fn. 1 [35 Cal.Rptr. 668, 100 A.L.R. 2d 544] ; see also *Stockwell* v. *Lindeman,* 229 Cal.App.2d 750 [40 Cal.Rptr. 555].) These cases set forth the text of a sufficient and proper agreement to subordinate.

Not only was the loan to which defendants were requested to subordinate radically different from the true construction loan which they expected, but it was for an entirely different amount. The original instructions of defendants, and their supplemental instructions, amounted to an agreement to subordinate to a trust deed securing not in excess of $96,000 on a single lot. They properly refused to subordinate their trust deed to one of $135,000.

188

Plaintiffs state in their brief that in the escrow instructions of the parties of October 14, 1963, as amended January 28, 1964, defendants agreed to subordinate their trust deed to a trust deed securing ''not to exceed $96,000.00 for one lot, $192,000.00 for two lots and $288,000.00 for three lots.'' There is no such provision in any of the escrow instructions. The assertion in the brief misstates the escrow instructions which we have previously quoted. Defendants did not agree to subordinate their security to any trust deed other than one of not to exceed $96,000 upon lot 23, which of course, was the only one upon which they would have had a lien. The record indicates that all the escrow instructions were prepared by an unskilled clerk in the office of the loan company. They should have been prepared by someone with legal knowledge. But legal assistance would only have made clear to the defendants the attempt to hold them to a contract they did not make, and they eventually discovered that fact.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.