[No. E007955. Fourth Dist., Div. Two. Dec. 30, 1991.]

PROTECTIVE EQUITY TRUST #83, LTD., Plaintiff and Appellant, v. BASIL L. BYBEE et al., Defendants and Respondents.

142

COUNSEL

McCann & Goldstein, McCann & Carroll and C. Daniel Carroll for Plaintiff and Appellant.

Jacobs & Gregory and Kathleen Jacobs for Defendants and Respondents.

OPINION

**RAMIREZ, P. J.**—Plaintiff appeals from judgment entered following the trial court's grant of defendants' motion for summary judgment in plaintiff's action to quiet title to real property and for declaratory and injunctive relief. On appeal plaintiff contends that there are disputed issues of material fact with regard to enforcement of an agreement entered into between plaintiff and a third party under which plaintiff had agreed to subordinate its trust deed to that of defendants, and that the trial court therefore erred in granting the motion for summary judgment.

FACTS

In July 1987 plaintiff Protective Equity Trust #83, Ltd. (hereinafter seller) was the owner of the real property which is the subject of this dispute. Seller agreed to sell the property to Adams Development Corporation (hereinafter buyer) for $210,000. Under the escrow instructions prepared by Rialto Escrow Company and dated July 30, 1987, seller was to be paid $40,000 and was to carry back a purchase money trust deed in the amount of $170,000.

In addition to those provisions the escrow instructions provided: "Buyer to obtain a new development loan and a new construction loan from a financial institution for an amount not to exceed $95,000.00. Upon buyer obtaining a new construction loan, seller agrees to subordinate."

Buyer subsequently arranged through Sierra Home Loans, Inc., to obtain a loan on the property from defendants Bybee, et al. (hereinafter lenders) in the maximum amount of $95,000. Buyer then presented a subordination agreement to seller which contained blank spaces which were to be completed by the escrow officer regarding the amount of the anticipated new loan and the identity of the new lender.

Donald Hensel executed the subordination agreement on behalf of seller. Before executing the subordination agreement, however, Hensel struck out a provision in the form which stated that seller approved and consented to the provisions of the note and deed of trust in favor of lenders and all other agreements between buyer and lenders, and he also struck a statement giving notice that the subordination agreement contained a provision under which buyer was allowed to use portions of the construction loan for purposes other than improvement of the property. The escrow officer later inserted in the subordination agreement language identifying lenders as the beneficiaries of the subordinating loan which was for a maximum amount of $95,000. As recorded, the subordination agreement contained a provision disclaiming any obligation by the lenders to oversee the use of the proceeds of their loan.

The escrow instructions between seller and buyer were amended on August 13, 1987, to provide that "Buyer agrees to delete paragraph in the subordination agreement and warrants all funds from the development loan will be used to develop the property."

Lenders admitted having received a copy of the original escrow instructions, but the escrow and loan officers representing lenders denied that lenders had received a copy either of the amended escrow instructions or of the subordination agreement, and seller's representatives could not remember whether copies had been provided to lenders. Lenders claimed, and seller has conceded, that seller had received no assurances from lenders that lenders would oversee the use of the funds loaned to buyer.

At the close of escrow approximately $40,000 of the money provided to buyer by lenders under the new loan was used to pay the down payment to seller for the purchase of the property. The balance of the loan, in the approximate amount of $48,900, was paid out to buyer.

On October 15, 1987, the trust deeds of both seller and lenders were recorded. Lenders' trust deed was recorded as a first trust deed on the property and was given recording priority as document No. 87-370147; seller's trust deed was recorded as a second trust deed, document No. 87-370148; and the subordination agreement was recorded as document No. 87-370149.

Buyer subsequently defaulted on its obligations to both seller and lenders, and seller obtained title to the property at a sale of the property by seller's trustee.

On June 5, 1989, seller filed this action against lenders. Seller alleged that its interest in the property was threatened by the impending foreclosure by lenders on their subordinating deed of trust and it sought from the court a judgment quieting title in seller. Seller also sought a judicial declaration that lenders' deed of trust was subordinate to that of seller and an injunction to prevent lenders from completing the threatened foreclosure on their trust deed.

Lenders answered seller's complaint and denied the allegations. The trial court granted a temporary injunction prohibiting lenders from proceeding with their foreclosure pending trial and required seller to post a bond to indemnify lenders for harm suffered in the event seller did not ultimately prevail.

In January 1990 lenders filed a motion for summary judgment or in the alternative for summary adjudication of issues. Attached to the motion was a statement of facts which lenders contended were undisputed.

In their motion lenders argued that since a portion of their loan had been used to pay the purchase price of $210,000 owed to seller under seller's original contract with buyer, lenders' loan was a purchase money deed of trust entitled to statutory priority under Civil Code section 2898,[1] and since it had been recorded before seller's deed of trust it was entitled to priority under Civil Code section 2897.[2]

Lenders argued further that since there was no privity of contract between seller and lenders, and since lenders had no knowledge of either the subordination agreement between seller and buyer or the amended escrow instructions prohibiting use of the development loan for purchase of the property, lenders owed no duty to the seller.

Lenders stated that the loan obtained from them was a purchase and development loan rather than a construction loan, and contended that the sophistication of the seller and the fact that the seller's agent had amended the subordination agreement argued against a finding that the seller should

---

[1]Civil Code section 2898 provides, in relevant part: "A mortgage or deed of trust given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws."

[2]Civil Code section 2897 provides, in relevant part: "Other things being equal, different liens upon the same property have priority according to the time of their creation . . . ."

be relieved of its obligation under the subordination agreement. Lenders noted also that seller had waited to file a lawsuit until it had already received title to the property by virtue of its foreclosure sale.

In its response to the motion for summary judgment seller argued that in order to grant lenders' motion the court would have to determine either that the subordination agreement was valid or that lenders' trust deed would have been given recording priority even in the absence of the subordination agreement. Seller claimed that lenders were not entitled to summary judgment on either of those grounds.

As to the latter issue, seller attached a declaration by Genny Hornsby, the escrow officer at Rialto Escrow, who stated that but for the subordination agreement she would not have allowed lenders' trust deed to be recorded ahead of seller's trust deed.

Seller next argued that the subordination agreement was invalid as a matter of law. It first argued that a condition precedent to the agreement to subordinate was that the subordinating loan come from a "financial institution." Lenders were individual investors who had pooled their funds. Seller claimed that this condition was particularly important because of the fund control restrictions imposed by institutional lenders. Seller argued that failure of a condition precedent renders a contract unenforceable, and that as a consequence the subordination agreement was unenforceable.

A similar argument was made with regard to the restriction in the subordination agreement regarding use of the subordinating loan only to develop the property. Seller dismissed lenders' arguments that lenders had had no notice of that provision, arguing that lenders were aware that seller had agreed to subordinate its loan, and that lenders should have inquired about the terms of the subordination.

Seller countered lenders' arguments that there was no privity of contract between seller and lenders by citing *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023, 1033 [96 Cal.Rptr. 338], a decision in which this court held that a construction lender was a third party beneficiary of the subordination contract between seller and buyer.

Finally, seller argued that the subordination agreement was unenforceable under California case law since it provided insufficient protection to seller's position under *Handy* v. *Gordon* (1967) 65 Cal.2d 578 [55 Cal.Rptr. 769, 422 P.2d 329, 26 A.L.R.3d 848].

In February 1990 lenders filed a supplement to their motion for summary adjudication of issues in which they asked the court to determine that

lenders' trust deed was a purchase money deed of trust; that lenders were not bound by the subordination agreement; and that lenders' deed of trust had not been foreclosed.

Seller filed its own motion for summary judgment or summary adjudication of issues in which it asked the court to determine that the only reason lenders' deed of trust was recorded prior to the seller's deed of trust was the subordination agreement, and that the subordination agreement was invalid as a matter of law.

At a brief hearing on the consolidated motions for summary judgment the trial court stated that it had read and considered the materials submitted by both parties. The court concluded that the dispute involved two innocent parties and should therefore be resolved under Civil Code section 2897 which gives priority to liens according to the time of their creation. Since lenders' lien was recorded first they had priority and were entitled to judgment in their favor.

The court granted lenders' motion for summary judgment and deemed seller's motion for summary judgment or summary adjudication of issues to be moot. Seller has appealed.

### DISCUSSION

### I. STANDARD AND SCOPE OF REVIEW

■ "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. [Citations.] First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [Citations.]

"Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. [Citations.] The motion must stand self-sufficient and cannot succeed because the opposition is weak. [Citations.] A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. [Citations.]

■ "When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates

the existence of a triable, material factual issue. [Citation.] Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue. [Citations.] A court generally cannot resolve questions about a declarant's credibility in a summary judgment proceeding [citation], unless admissions against interest have been made which justify disregard of any dissimulation. [Citation.] A sufficient motion cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings. [Citations.]" (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

## II. SELLER'S COMPLAINT

### A. *Quiet Title Action*

Seller's first cause of action to quiet title was based on the title to the property acquired at the trustee's sale following foreclosure of its trust deed on the property. Seller sought to quiet title as of the date of the trustee's deed, May 31, 1989. The identity of the property and seller's claim to title following the trustee's sale have not been disputed by lenders. The only disputed issue is whether seller took title subject to the deed of trust held by lenders, or whether lenders' deed of trust was subordinate to that of seller and was destroyed by seller's foreclosure on the senior lien.

### B. *Declaratory Relief*

In its second cause of action for declaratory relief seller raised the identical issue concerning the respective rights of seller and lenders. Seller contended that it was the fee simple owner of the property; lenders claimed that their lien was senior to the lien by which seller had acquired title to the property. Seller sought a judicial determination that lenders' deed of trust was subordinate to that of seller, that lenders' interest in the property had been foreclosed, and that lenders therefore could not proceed with their threatened foreclosure.

### C. *Injunction*

Seller sought to enjoin lenders from completing the threatened foreclosure under their deed of trust and sought an order directing lenders to execute and record a notice of rescission of default.

## III. Subordination Agreement

### A. *Application of Lien Law*

■ In seeking summary judgment on the ground that they had priority under the recording statute, lenders seek to maintain a distinction between circumstances in which a seller's trust deed is actually recorded before that of lenders and seller then agrees to subordinate, and circumstances such as those before us in which seller agrees to permit lenders to record first. That distinction has been made by some courts and approved by some commentators, and has a substantial impact on the remedies available.[3]

That distinction was rejected by this court, however, in its decision in *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023. "In our view there is no justification, legal or otherwise, which would call for a different result whether the seller in a joint transaction records first and then agrees that his lien will be subordinated or whether he agrees that the lender may achieve priority through first recording." (*Id.,* at p. 1034.)

We agree with that ruling and we find it is appropriately applied in this case. Accordingly, we may consider the impact of the subordination agreement on the priority of the liens of the parties in this case and do not limit the parties to such remedies as might be available in an action under the subordination agreement.

### B. *Basis of Recording Priority*

■ In its motion for summary judgment seller sought adjudication as a fact without substantial controversy that lenders' deed of trust was recorded prior to the seller's deed of trust only because of seller's agreement to subordinate its trust deed to a construction loan. In support of its motion seller offered a declaration by the escrow officer at Rialto Escrow Company who stated that but for the subordination agreement she would not have allowed lenders' trust deed to be recorded prior to that of seller. Her statement is consistent with the documents in the file which show that

---

[3]"Subordination involves a change or reversal of the relative priority of two interests in the same property created as a matter of lien law. When the seller contracts initially to receive a junior lien, there is no issue of the alteration of the priority of his lien. The issue is the rights that the parties may have as a matter of *contract* law, or the rights the seller has *otherwise* as a junior lienor. In this situation, the seller receives a *second lien,* which is exactly what he bargained for. If proceeds from the loan are not applied as provided in the contract between the seller and the buyer, there is no failure of a condition of subordination." (3 Miller & Starr, Current Law of Cal. Real Estate (2d ed. 1989) § 8:167, at p. 654, fn. omitted.)

seller's trust deed was dated several months before that of lenders, and with the provision in the original escrow instruction which indicated seller's willingness to subordinate its deed of trust to a subsequent construction loan.

Lenders have not provided evidence to contradict that of seller other than an assertion, with no citation to the record, that the escrow officer's declaration was contradicted by her deposition testimony.[4] We find no substantial dispute in the record as to this issue of material fact and we therefore conclude that seller's deed of trust was recorded after lenders' deed of trust only because of seller's agreement to subordinate its trust deed to a subsequent construction loan.

## C. ENFORCEMENT OF SUBORDINATION AGREEMENT

■ We now reach the central issue in this dispute: whether as a matter of law lenders can enforce the subordination agreement and foreclose on their trust deed on the property.

A number of issues raised in this case were considered in *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023. In *Middlebrook* the seller of the property filed suit against the construction lender after buyer abandoned the unfinished building on the property. (*Id.,* at p. 1027.) Lender purchased the property at foreclosure sales on lender's trust deeds, and seller filed suit seeking either restoration of priority of its trust deeds or damages. (*Id.,* at p. 1028.) Lender's demurrers were sustained and seller appealed.

The complaint alleged that buyer represented to seller that lender's funds would be used exclusively for construction of improvements on the property. (18 Cal.App.3d at p. 1028.) Seller further alleged that lender had knowledge of seller's trust deeds, and that lender had voluntarily undertaken to control disbursements from the construction loan. (*Id.,* at p. 1029.) Seller alleged that lender had disbursed $300,000 (out of a loan in the total amount of $1,464,400) which were not for construction purposes. (*Ibid.*)

In reversing the judgment of dismissal the court stated "the lender's claim to priority flows from the agreement between the seller and the buyer. It is

---

[4] Our review of the portions of that testimony included in the record on appeal do not reveal statements inconsistent with the declaration.

only as a result of the seller's waiver of his statutory right to a first lien that the lender achieves priority. Thus, the lender is a third party beneficiary in the seller-buyer agreement, but only to the extent that it abides by the conditions of subordination. If the lender does not comply with the seller's conditions it does not achieve priority." (18 Cal.App.3d at p. 1033.) The court also discussed the policy reasons in favor of protecting sellers in subordination situations.

The similarities between *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* and the case before us are compelling. However, a notable difference is the fact that in *Middlebrook* the plaintiff alleged that the lender had undertaken to oversee disbursement of the funds. That factor is cited by lenders here as sufficient grounds for distinguishing the result in *Middlebrook.* We must now decide whether lenders' refusal to agree to supervise disbursement of the loan proceeds defeats seller's attempt to set aside the subordination agreement on the grounds that it had not been complied with.

The terms of the agreement between buyer and seller consisted of the escrow instructions dated July 30, 1987, the subordination agreement of the same date, and the amended escrow instructions dated August 13, 1987. (See *Miller* v. *Citizens Sav. & Loan Assn.* (1967) 248 Cal.App.2d 655, 661 [56 Cal.Rptr. 844] ["looking at the several instruments by themselves and construing them according to their face, they should be regarded as being a single transaction"].)

There is some question whether lenders had seen or received copies of the subordination agreement or the amended escrow instructions; it is undisputed, however, that lenders were aware of the provision in the original escrow instructions which stated: "Upon buyer obtaining a new construction loan, seller agrees to subordinate." Lenders were thus aware that seller had agreed to subordinate only to a construction loan.

■ " 'The law is well settled that rights of priority under an agreement of subordination extend to and are limited strictly by the express terms and conditions of the agreement. [Citations.]' " (*Miller* v. *Citizens Sav. & Loan Assn., supra,* 248 Cal.App.2d at p. 663.) ■ Neither party claims that the loan made by lenders to buyer was used for construction on the property. Lenders have argued strenuously that since a portion of the loan was used to purchase the property, their loan should be characterized as a purchase money loan, and their lien a purchase money deed of trust. It cannot be disputed that the terms of the agreement under which seller agreed to subordinate were not complied with.

It is also undisputed that lenders made no representations that they would supervise the use of their loan to buyer. Lenders' refusal to undertake that supervision, however, did not insulate them from risk of loss in the event that buyer failed to meet the terms of its agreement with seller.

As a third party beneficiary of the agreement between seller and buyer, lenders cannot now seek to enforce seller's obligation under that agreement once the agreement has been breached by buyer. Lenders cannot assert greater rights than those of buyer under the subordination agreement (*Marina Tenants Assn.* v. *Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 126 [226 Cal.Rptr. 321]), and under the agreement buyer would not have been able to force seller to subordinate to a loan other than a construction loan. (*Pollock* v. *Tiano* (1967) 253 Cal.App.2d 183, 185 [61 Cal.Rptr. 235].) Accordingly, we hold that the subordination agreement cannot be enforced by lenders.[5]

Policy considerations also support this result. Were we to hold that lenders' failure to undertake supervision of buyer's use of construction loan funds insulated lenders from loss, subordinating lenders would have every reason to refuse any form of oversight obligation. As between the seller and the construction lender, the lender is in a far better position to monitor and control the buyer's use of funds than is the seller of the property. As stated by Justice Gabbert in *Middlebrook—Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d at page 1037: "[A]llocation of the loss to the lender would encourage the parties to provide for the various contingencies by contract."

We hold that the terms of the agreement between seller and buyer were breached by buyer and that the agreement is therefore unenforceable by lenders. Since we have determined that the priority of recording was based only on the subordination agreement, upon failure of that agreement the priority must be reversed and seller's trust deed must be deemed to be senior to lenders' trust deed. Therefore, the summary judgment entered in favor of lenders must be reversed.

---

[5] The United States Court of Appeals for the Ninth Circuit has reached a similar conclusion in a very recent opinion reversing a grant of summary judgment in favor of lender who had recording priority over sellers based on sellers' agreement to subordinate. The court there concluded that "under California law, when a seller subordinates his purchase money lien to a lender's lien by permitting the lender to record first, and the lender knows that the seller has agreed to record his deed second for the purpose of affecting [*sic*] a subordination, the priority of the lender's lien is contingent upon the fulfillment of any conditions stated in the seller's lien, whether or not the lender has actual knowledge of those conditions at the time the deeds are recorded." (*In re Sunset Bay Associates* (9th Cir. 1991) 944 F.2d 1503, 1513.)

## DISPOSITION

The judgment is reversed with directions to the trial court to rule on the seller's motion for summary judgment and summary adjudication of issues.

Timlin, J., and McKinster, J., concurred.

A petition for a rehearing was denied January 22, 1992, and respondents' petition for review by the Supreme Court was denied March 18, 1992. Panelli, J., was of the opinion that the petition should be granted.