[No. B234384. Second Dist., Div. Six. Jan. 23, 2013.]

R.E. LOANS, LLC, Plaintiff, Cross-defendant and Respondent, v. INVESTORS WARRANTY OF AMERICA, INC., et al., Defendants, Cross-complainants and Appellants.

## Counsel

Buchalter Nemer, John L. Hosack and Robert M. Dato for Defendants, Cross-complainants and Appellants.

James P. Ballantine for Plaintiff, Cross-defendant and Respondent.

## Opinion

**GILBERT, P. J.**—Several loans on real property may be secured by a single deed of trust and cross-defaulted, that is, a default on one will be a default on all. Here we conclude that unless the parties otherwise agree, the priority of the loans does not change.

Plaintiff agreed to subordinate its existing trust deed to a new trust deed in favor of defendants securing a note in the amount of $4,006,600. Defendants'

new trust deed, however, secured that note plus two other notes for a total of $21 million. The notes were "cross-defaulted."

Plaintiff claimed that defendants breached the subordination agreement because the loan secured by defendants' trust deed exceeded $4,006,600. The trial court agreed and granted plaintiff summary judgment in its action for declaratory relief. We reverse.

Defendants did not breach the subordination agreement. The notes secured by defendants' trust deed are treated as separate loans. Plaintiff's trust deed is subordinate only to the $4,006,600 loan. The agreement to cross-default the loans is between defendants and their borrower. It does not affect plaintiff's right to protect its interest by curing the default under the $4,006,6000 note.

## FACTS

Martin Weyrich Winery, LLC, and related entities (collectively Weyrich) owned a parcel of real property in San Luis Obispo County known as "Jack's Ranch." The ranch was encumbered by a number of loans including a third trust deed held by R.E. Loans, LLC (RE), securing a loan of $6.5 million.

In 2006, Weyrich refinanced the loans secured by Jack's Ranch. Weyrich paid the first two loans and paid RE $3.5 million on its existing loan. In return, RE subordinated its existing deed of trust to a new loan from Transamerica Financial Life Insurance Company (Transamerica) in the amount of $4,006,600.

The subordination agreement provides that RE will subordinate its trust deed to "a new loan in the principal sum of $4,006,600[] secured by new first deed of trust . . . in favor of [Transamerica]."

Paragraph 1 of the subordination agreement provides that RE's trust deed will be subordinate in all respects, "including all renewals, modifications, and extensions thereof that do not increase the rate of interest that is charged on the new loan, and that do not increase the principal amount of the new loan other than by the accrual of interest or other charges that may become due under the terms of the new loan."

Similarly, paragraph 8 of the subordination agreement provides in part: "New Lender may extend the time for payment, surrender any security, collateral or claims related to the indebtedness of Borrower to New Lender and may make any settlements and compromise thereof; all without notice to or consent of the Existing Lender and without affecting New Lender's rights hereunder provided that the same do not increase the rate of interest that is

charged on the new loan, and do not increase the principal amount of the new loan other than by the accrual of interest or other charges that may become due under the terms of the new loan."

The agreement also contains an integration clause as follows: "This Subordination Agreement, when executed, shall constitute the one and only agreement or set of rights and obligations as between New Lender and the Existing Lender. The Existing Lender expressly agrees that the Existing Lender shall not be entitled to rely upon any fact, circumstance, assumption, representation, or understanding which is not expressly set forth in this Subordination Agreement."

After RE recorded the subordination agreement, Transamerica recorded a trust deed encumbering Jack's Ranch in April 2007. The trust deed recites that it secures a note in the principal amount of $4,006,600. It also recites that it secures "any and all obligations and covenants of Trustor under . . . any other agreement . . . including without limitation . . . that certain . . . Loan Agreement dated as of even date herewith between Trustor and Beneficiary . . . ."

The loan agreement between Weyrich and Transamerica provides that the trust deed not only secures a note in the amount of $4,006,600, but also notes in the amount of $11,227,500 and $5,912,750. The loan agreement states that the loans are intended to be "cross-defaulted." A default under any of the loans is a default under all the loans. The loan agreement also states that the loans are "cross-collateralized." The loans are secured by trust deeds encumbering two properties in addition to Jack's Ranch.

Transamerica assigned its interest in the trust deed to Investors Warranty of America, Inc. (Investors).

On July 23, 2009, the trustee recorded a notice of default. The notice informed Weyrich that the amount necessary to cure the default is $26,307,307.93. The notice states the obligation secured is a note for $4,006,600. The notice further states in all capital letters that payment has not been made of: "THE BALANCE OF THE PRINCIPAL [SUM] TOGETHER WITH INTEREST AND DEFAULT INTEREST DUE THEREON; COSTS AND EXPENSES, OTHER FEES, COSTS AND EXPENSES ASSOCIATED WITH THE PROTECTION OF THE SECURITY WHICH IS CROSS-DEFAULTED AND CROSS-COLLATERALIZED WITH OTHER LOAN DOCUMENTS AND OBLIGATIONS EXECUTED BY TRUSTOR, LOAN NO. 700192 AND 700193. THE DEFAULT AMOUNT CONTAINED HEREIN INCLUDES THE AGGREGATE AMOUNT DUE AS OF THE DATE REFERENCED HEREON. TO CURE THE DEFAULT, YOU MUST PAY ALL SUMS DUE . . . ."

The notice of sale estimated the principal, interest and fees to be paid under the sale as $5,135,945.51. Investors bid $4,625,000 at the trustee's sale and received a deed to Jack's Ranch.

RE brought an action against Investors and others for declaratory relief. RE asked the court to declare its trust deed to be a first lien on Jack's Ranch and that its first trust deed was not affected by the trustee's sale. Investors cross-complained for declaratory relief. Investors asked the court to declare the subordination agreement valid and enforceable and that RE's interest in Jack's Ranch has been extinguished. The parties made cross-motions for summary judgment.

The trial court granted RE's motion for summary judgment and denied Investors's motion. In granting RE's motion, the court concluded Transamerica failed to comply with the terms of the subordination agreement. RE agreed to subordinate its trust deed to a loan in the principal sum of $4,006,600. Instead, Transamerica's trust deeds secured loans in excess of $21 million.

## DISCUSSION

### I.

Summary judgment is properly granted only if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The court must draw all reasonable inferences from the evidence set forth except where such inferences are contradicted by other inferences or evidence that raises a triable issue of fact. (*Ibid.*) In examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of its opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].)

The moving party has the initial burden of showing that one or more elements of a cause of action cannot be established. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) Where the moving party has carried that burden, the burden shifts to the opposing party to show a triable issue of material fact. (*Ibid.*) Our review of the trial court's grant of the motion is de novo. (*Id.* at p. 767.)

### II.

RE argues the subordination agreement is unenforceable because Transamerica failed to comply with its terms. (Citing *Protective Equity Trust*

*#83, Ltd. v. Bybee* (1991) 2 Cal.App.4th 139, 150 [2 Cal.Rptr.2d 864]; 5 Miller & Starr, Cal. Real Estate (3d ed. 2009) Recording and Priorities, § 11:213, p. 11-718 (rel. 9/2009).) RE points out the subordination agreement is limited to one loan in the amount of $4,006,600. RE claims Transamerica breached the agreement by using its trust deed to secure three loans totaling $21,196,850.

Our Supreme Court considered the effect of multiple notes secured by a mortgage in *Hocker v. Reas* (1861) 18 Cal. 650. There, a mortgage secured two notes, each of which had different due dates. The mortgagor defaulted when the first note became due, and the mortgagee foreclosed. The mortgagor exercised his right of redemption. The court determined that the mortgagor redeemed the property subject to the mortgage lien of the second note.

*Hocker* is factually distinguishable. But it illustrates that where a number of notes are secured by a single trust deed, they are treated as separate secured loans.

Here Investors's trust deed secured three notes, one of which was for $4,006,600. RE agreed to subordinate its trust deed to a trust deed securing a note in that amount. To the extent Investors's trust deed secured a note in the amount of $4,006,600, it was senior to RE's trust deed. To the extent Investors's trust deed secured other notes it is junior to RE's trust deed. That would be the result had each note been secured by its own trust deed. There is no reason why a different result should pertain because the notes are secured by a single trust deed.

The transaction between Weyrich and Transamerica did not breach the subordination agreement because RE's trust deed was subordinate only to the $4,006,600 loan. Nothing in the subordination agreement prohibits the creation of the liens junior to RE's trust deed.

Nor did the transaction between Weyrich and Transamerica breach the subordination agreement's prohibition on modifying the principal amount of the loan. RE's trust deed was subordinate only to the $4,006,600 loan. It is true that the agreement between Weyrich and Transamerica called for all three loans to be "cross-defaulted." But the agreement between Weyrich and Transamerica was not binding on RE.

RE points out that the notice of default states the amount necessary to cure the default is $26,307,307.93. RE claims, without citation to authority, that it was required to pay over $26 million to protect its trust deed.

But the language in the notice of default on which RE relies is required by Civil Code section 2924c, subdivision (b)(1). It begins in capital

letters: "If your property is in foreclosure because you are behind on your payments, it may be sold without any court action . . . ." It further advises: "[Y]ou may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses . . . . This amount is ___ . . . ." The mandatory language of Civil Code section 2924c, subdivision (b)(1) is directed to the property owner, not the holder of a junior trust deed. It advises Weyrich that it is in default in the amount of $26 million. It states in capital letters that the $26 million is based not only on the default of the $4,006,600 loan but on default under two other loans. The notice does not purport to advise the holder of a junior trust deed how much it must pay to protect its interest.

In fact, the notice of default advises that the foreclosure is based on a note for $4,006,600. The notice of sale estimates the principal, interest and fees to be paid under the sale as $5,135,945.51, not $26 million. Investors purchased the property at the foreclosure sale for $4,625,000.

There is nothing in law or logic that would require RE to cure the default under all of Weyrich's loans in order to protect its interest. RE could have protected its interest by tendering the amount necessary to cure the default under the $4,006,600 note alone, the only note to which its trust deed was subordinate. RE points to no evidence it attempted to do so.

The judgment is reversed. Costs on appeal are awarded to appellants.

Yegan, J., and Perren, J., concurred.

A petition for a rehearing was denied February 21, 2013, and respondent's petition for review by the Supreme Court was denied May 1, 2013, S209034.