Filed 8/27/15  R.E. Loans v. Investors Warranty of America CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| R.E. LOANS, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>INVESTORS WARRANTY OF<br>AMERICA, INC., et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B256149<br>(Super. Ct. No. CV090732)<br>(San Luis Obispo County) |

In *R.E. Loans v. Investors Warranty of America* (2013) 212 Cal.App.4th 1432 (*RE-1*), the trial court granted summary judgment to a lender seeking to avoid a subordination agreement on the ground that the senior lender breached the agreement.  We reversed.  We determined that a senior lender did not breach the subordination agreement; that the subordinated junior lender was subordinated only to a loan in the amount of $4,006,600, not the entire $21 million in loans held by the senior lender; and that the junior lender could have prevented foreclosure of the senior loan by tendering the amount sufficient to cure the default on the $4,006,600 senior loan.

On remand, the subordinated lender amended its complaint to allege the senior lender prevented it from curing the default on the $4,006,600 loan. Nevertheless, the trial court sustained the senior lender's demurrer on the ground that the subordinated lender did not allege tender of payment to cure the default. But as alleged, the subordinated lender was prevented from doing so. We reverse again.

FACTS

Martin Weyrich Winery, LLC and related entities (collectively Weyrich) owned a parcel of real property in San Luis Obispo County known as "Jack's Ranch." The ranch was encumbered by a number of loans, including a third trust deed held by R.E. Loans, LLC (RE), securing a loan of $6.5 million.

In 2006, Weyrich refinanced the loans secured by Jack's Ranch. Weyrich paid the first two loans and paid RE $3.5 million on its existing loan. In return, RE subordinated its existing deed of trust to a new loan from Transamerica Financial Life Insurance Company (Transamerica) in the amount of $4,006,600.

The subordination agreement provides that RE will subordinate its trust deed to "a new loan in the principal sum of $4,006,600[] secured by [a] new first deed of trust . . . in favor of [Transamerica]."

After RE recorded the subordination agreement, Transamerica recorded a trust deed encumbering Jack's Ranch in April 2007. The trust deed recites that it secures a note in the principal amount of $4,006,600. It also recites that it secures "any and all obligations and covenants of Trustor under . . . any other agreement . . . including without limitation . . . that certain . . . Loan Agreement dated as of even date herewith between Trustor and Beneficiary."

The loan agreement between Weyrich and Transamerica provides that the trust deed not only secures a note in the amount of $4,006,600, but also notes in the amount of $11,227,500 and $5,912,750. The loan agreement states that the loans are intended to be "cross-defaulted." A default under any of the loans is a default under all the loans. The loan agreement also states that the loans are

2

"cross-collateralized." The loans are secured by trust deeds encumbering two properties in addition to Jack's Ranch.

Transamerica assigned its interest in the trust deed to Investors Warranty of America, Inc. (Investors).

On July 23, 2009, the trustee recorded a notice of default. The notice informed Weyrich that the amount necessary to cure the default is $26,307,307.93. The notice states the obligation secured is a note for $4,006,600.

The notice of sale estimated the principal, interest and fees to be paid under the sale as $5,135,945.51. Investors bid $4.625 million at the trustee's sale and received a deed to Jack's Ranch.

RE brought an action against Investors and others for declaratory relief. RE asked the court to declare its trust deed to be a first lien on Jack's Ranch and that its first trust deed was not affected by the trustee's sale. RE's theory was that Investors breached the subordination agreement by using its trust deed to secure three loans totaling $21,196,850, instead of one loan in the amount of $4,006,600. Investors cross-complained for declaratory relief. Investors asked the court to declare the subordination agreement valid and enforceable and that RE's interest in Jack's Ranch has been extinguished. The parties made cross-motions for summary judgment.

The trial court granted RE's motion for summary judgment and denied Investors' motion. In granting RE's motion, the court concluded Transamerica failed to comply with the terms of the subordination agreement. RE agreed to subordinate its trust deed to a loan in the principal sum of $4,006,600. Instead, Transamerica's trust deeds secured loans in excess of $21 million.

We reversed. In reversing, we stated:

"Here Investors' trust deed secured three notes, one of which was for $4,006,600. RE agreed to subordinate its trust deed to a trust deed securing a note in that amount. To the extent Investors' trust deed secured a note in the amount of $4,006,600, it was senior to RE's trust deed. To the extent Investors' trust deed

3

secured other notes it is junior to RE's trust deed. That would be the result had each note been secured by its own trust deed. There is no reason why a different result should pertain because the notes are secured by a single trust deed.

"The transaction between Weyrich and Transamerica did not breach the subordination agreement because RE's trust deed was subordinate only to the $4,006,600 loan. Nothing in the subordination agreement prohibits the creation of the liens junior to RE's trust deed.

"Nor did the transaction between Weyrich and Transamerica breach the subordination agreement's prohibition on modifying the principal amount of the loan. RE's trust deed was subordinate only to the $4,006,600 loan. It is true that the agreement between Weyrich and Transamerica called for all three loans to be "cross-defaulted." But the agreement between Weyrich and Transamerica was not binding on RE." (*RE-1*, *supra*, 212 Cal.App.4th at p. 1437.)

Investors petitioned for rehearing, requesting that we direct the trial court to enter judgment in its favor. We denied the petition.

On remand, RE made a motion in the trial court to amend its complaint. The trial court granted the motion over Investors' objection.

In its first amended complaint, RE alleged that after Investors issued the notice of default, Investors insisted the entire $26 million in default under its deed of trust was senior to RE's trust deed; that RE pay that amount; that Investors refused to allow RE to reinstate the $4,006,600 loan; and that based on documents acquired in discovery, the amount necessary to reinstate the $4,006,600 loan was approximately $320,000. The complaint requested damages for breach of contract, declaratory relief and the imposition of an equitable lien.

Investors demurred to the complaint. The trial court sustained the demurrer on the ground that RE did not allege tender of payment to cure the default.

4

DISCUSSION

I.

The function of a demurrer is to test whether, as a matter of law, the facts alleged in the complaint state a cause of action under any legal theory. (*Intengan v. BAC Home Loans Servicing, LP* (2013) 214 Cal.App.4th 1047, 1052.) We assume the truth of all facts properly pleaded, as well as facts of which the trial court properly took judicial notice. (*Ibid.*) But we do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*) Our review of the trial court's decision is de novo. (*Ibid.*)

II.

In *RE-1*, we determined that the subrogation agreement made RE's trust deed junior only to Investors' trust deed securing a $4,006,600 loan. RE's trust deed was not junior to Investors' trust deed to the extent it secured the entire $26 million package of loans. The agreement cross-collateralizing and cross-defaulting Investors' loans was between Transamerica and Weyrich, and not binding on RE.

That is the law of the case. The decision of an appellate court stating a rule of law necessary to a decision in the case makes that rule determinative of the rights of the parties in any subsequent proceeding in the same case. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 459, p. 515.)

Here it follows from the law of the case that RE had the right to protect its loan by curing any default in the $4,006,600 senior loan. (Civ. Code, § 2924c, subd. (a)(1).)[1] RE alleges, however, that Investors took the position that RE's loan was subject to loans in the amount of $26 million and that Investors refused to allow RE to reinstate the $4,006,600 loan. That is sufficient to state a cause of action for breach of the subrogation agreement as well as a violation of section 2924c, subdivision (a)(1).

---

[1] All statutory references are to the Civil Code.

Investors' reliance on the final paragraph of our opinion in *RE-1* is misplaced. There we stated: "There is nothing in law or logic that would require RE to cure the default under all of Weyrich's loans in order to protect its interest. RE could have protected its interest by tendering the amount necessary to cure the default under the $4,006,600 note alone, the only note to which its trust deed was subordinate. RE points to no evidence it attempted to do so." (*RE-1*, *supra*, 212 Cal.App.4th at p. 1438.)

The paragraph assumes that Investors did nothing to prevent RE's right to cure the default. RE's first amended complaint, however, alleges that Investors refused to allow RE to reinstate the loan.

Ordinarily, an action to set aside a foreclosure sale requires tender of the amount owed on the secured debt. (*Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1367.) But tender is not required where it would be a futile act. (*Sutherland v. Barclays American/Mortgage Corp.* (1997) 53 Cal.App.4th 299, 313.) RE's first amended complaint alleges that Investors insisted RE tender an amount to cure the entire $26 million in default. That is sufficient to allege a tender of the amount to cure the default in the $4,006,600 loan would have been futile.

Investors contend that RE is judicially estopped from arguing that its motion for summary judgment resolved in *RE-1* did not dispose of the case.

Judicial estoppel prevents a party from asserting a position that is contrary to a position taken in the same or some earlier proceeding. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) The doctrine applies when the same party has taken inconsistent positions in a judicial or quasi-judicial proceeding, the tribunal adopted or accepted the first position as true, and the first position was not taken as a result of ignorance, fraud or mistake. (*Ibid.*)

Here RE's position is, now and has always been, that its trust deed was subject only to a loan in the amount of $4,006,600. The doctrine of judicial estoppel does not apply.

6

The allegations of RE's first amended complaint, if proved, entitle RE to money damages for breach of the subrogation agreement and section 2924c, subdivision (a)(1). They may also entitle RE to equitable relief to effectuate the parties' expectations under the terms of the subrogation agreement and prevent unjust enrichment. (See *Jones v. Sacramento Sav. & Loan Assn.* (1967) 248 Cal.App.2d 522, 529 [where construction lender did not fully comply with terms of subordination agreement, equity imposed a lien to prevent unjust enrichment].) The appropriate remedy is left to the trial court.

The judgment is reversed. Costs are awarded to respondents.

<u>NOT TO BE PUBLISHED.</u>



GILBERT, P. J.


We concur:



YEGAN, J.



PERREN, J.



7

Martin J. Tangeman, Judge

Superior Court County of San Luis Obispo

_____

James P. Ballantine for Plaintiff and Appellant.

Buchalter Nemer, PC, John L. Hosack, Robert M. Dato, Jason E. Goldstein for Defendants and Respondents.